[No. 55727–6.   En Banc.   February 28, 1991.]

STEVEN R. WILTSE, ET AL, *Respondents,* v. ALBERTSON'S
INCORPORATED, *Petitioner.*

*MacGillivray & Jones, P.S.,* by *Stephen C. Haskell* and
*Steven R. Stocker,* for petitioner.

*Lewis M. Schrawyer, Henderson & Nichols, P.S.,* and *Robert B. Henderson,* for respondents.

*Timothy J. Whitters* on behalf of Washington Defense Trial Lawyers, amicus curiae for petitioner.

*Robert H. Whaley* and *Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association, amicus curiae for respondents.

CALLOW, J.*—The plaintiff, Steven Wiltse, slipped and fell in water that came from a hole in the roof of the defendant, Albertson's Incorporated, self–service grocery store. At trial, the court instructed the jury that the plaintiff had the burden of proving that this condition had "existed for a sufficient length of time and under such circumstances that defendant or defendant's employees should have discovered it in the exercise of ordinary care."

The issue is whether the trial court erred in instructing the jury that the plaintiff had the burden of proving actual or constructive notice of the water existing at defendant's grocery store, based on *Pimentel v. Roundup Co.,* 100 Wn.2d 39, 666 P.2d 888 (1983).

In *Pimentel,* the plaintiff was injured when a can of paint struck her foot while she was looking through a magazine rack which contained books on home improvements. *Pimentel,* 100 Wn.2d at 41. There, the court held that the owner's actual or constructive knowledge of the hazard was not necessary *if* the existence of the hazard was *reasonably foreseeable. Pimentel,* 100 Wn.2d at 39. The new rule adopted in *Pimentel* was taken from a Colorado case, *Jasko v. F.W. Woolworth Co.,* 177 Colo. 418, 494 P.2d 839 (1972). The *Jasko* court reasoned:

> The basic notice requirement springs from the thought that a dangerous condition, when it occurs, is somewhat out of the ordinary. . . . In such a situation the storekeeper is allowed a

---

*Justice Keith M. Callow was a member of the Supreme Court at the time oral argument was heard on this matter. He is now serving as a justice pro tempore of the court pursuant to Const. art. 4, § 2(a) (amend. 38).

454

reasonable time, under the circumstances, to discover and correct the condition, *unless it is the direct result of his (or his employees') acts.* However, when the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable, the logical basis for the notice requirement dissolves. Then, actual or constructive notice of the specific condition need not be proved.

(Italics ours.) *Jasko,* 177 Colo. at 420–21. The court in *Pimentel* also stated that "the requirement of showing notice will be eliminated only if the particular self–service operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable." *Pimentel,* 100 Wn.2d at 50. That is not the case in the facts presented to us here.

There was no evidence that the leak in the roof was a result of Albertson's negligence nor that it came from the self–service operation of Albertson's. We will not abandon principles of negligence and make "self–service" stores liable whether they were aware or should have been aware of a dangerous condition.

*Pimentel* held that where the operating procedures of any store are such that unreasonably dangerous conditions are *continuous* or *reasonably foreseeable,* there is no need to prove actual notice of such conditions to establish liability for injuries caused by them. *Pimentel,* at 40. The *Pimentel* holding went on to say:

This does not change the general rule governing liability for failure to maintain premises in a reasonably safe condition: the unsafe condition must either be caused by the proprietor or his employees, or the proprietor must have actual or constructive notice of the unsafe condition.

*Pimentel,* at 49.

Here, none of the conditions expressed in *Pimentel* are present. That is, the conditions which led up to the plaintiff's accident were neither continuous, reasonably foreseeable, nor was the accident associated with the store's self–service mode of operation. The record bears this out.

First, there is no indication that the store manager or any employee was aware of the water on the floor previous to

Mr. Wiltse's accident. The record indicates that the accident happened shortly after 7 p.m. on November 28, 1982. The store manager testified that he had been past the location of the plaintiff's fall minutes before the accident happened and did not notice, or have any previous notice, of any foreign substance on the floor.[1] There was further testimony from an employee that she did not notice any water on the floor at the time she walked by the area to punch out.[2] Thus, the record indicates that the store manager had

---

[1]The manager testified about how he arrived at the answers which he put on the incident report.

"Q: And what's the next question?
"A: 'Is it possible to determine how long the substance was on the floor?'
"Q: What did you put?
"A: I put yes.
"Q: 'And if so, how long?' What was your answer?
"A: 'Inspected at 7:00.'
"Q: Why did you put down that particular answer?
"A: Well, I went back personally to the invoice box, which is in the back room, which is right over here, to grab the transmittals, so I would have talked—walked from here into the back room like this and grabbed my transmittals and exited out to the office.
"Q: So would you have been in the area?
"A: Twice.
"Q: When you were in that area, how close to the area where this gentleman fell would you pass?
"A: It would have to be, oh, three or four feet . . .
"Q: Did you see anything on the floor as you went by that particular area?
"A: No.
" . . . .
"Q: Okay. At any time prior to the time this man fell, were you aware, or to your knowledge, was anyone else that worked at the store aware there was a leak in the roof?
"A: Not to my knowledge, no."
Partial Report of Proceedings, vol. II, p. 19–22.

[2]The employee's testimony in reference to not noticing anything on the floor was:

"Q: And if I ask you to assume for the moment that this 'X' right here was an 'X' that Mr. Wiltse drew in as the area where he fell, can you tell the jury how close you would have walked to that 'X' at the time that you walked to the back of the store to check out?
"A: I would have walked right by it.
"Q: And as you walked right by it, what time was this approximately?
"A: Probably a few minutes after 7:00.

no notice that an unsafe condition existed in the store until after the time of Mr. Wiltse's accident.

The water came to rest on the floor because of a previously unnoticed leak in the building's roof, not from the dairy case or any other means associated with the store's self–service operation. At trial, the plaintiff testified that:

Q: Now, you indicated a few moments ago that you slipped in some water but yet you didn't see the water. How is it you knew that it was water that you had slipped in?

A: Well, naturally I was laying in it. It was hitting me from a hole or the grate or whatever in the ceiling. It was hitting me in the chest. I assumed it was water. I couldn't imagine what else could be up there.

Thus, the hazard came from a leaking roof which could give way suddenly, unforeseen and without notice. This is not the same as a continuing danger resulting from the store's self–service mode of operation.

The *Pimentel* rule does not apply to all self–service operations, but only if the particular self–service operation of the defendant is such that it is reasonably foreseeable that unsafe conditions in the self–service area might be created. The trial judge understood the difference between the facts of the case at bar and the rule established in *Pimentel* when he denied the proposed *Pimentel* instruction of the plaintiff. He stated:

With respect to the first exception with regard to whether or not the Court should utilize the las [*sic*] as set forth in *Pimentel,* simply because the defendant admittedly is a self–service grocery store, I feel the law, which in substance in *Pimentel* eliminates the need to show notice of a dangerous condition, should be applied to those cases in which the condition arises out of the *actual operation of such a self–service enterprise,* and if it does, then such an instruction is appropriate.

But here we have admittedly a condition which *really doesn't result from the self–service operation as such, but something entirely different, namely, a leaky roof,* and the

---

"Q: Did you see anything when you walked by there?
"A: No.
"Q: Did you hear anything when you walked by there?
"A: No."
Partial Report of Proceedings, vol. II, p. 5.

essence of the subject of liability is whether or not the defendant had notice of this condition or should have had notice, and I feel that we are therefore back to the basic law with respect to that duty as set forth in the Court's Instruction 13, based on Defendant's Proposed Instruction 19, and that it is necessary to give this in order to permit the defendant to argue its theory with respect to lack of notice.

(Italics ours.) Partial Report of Proceedings, vol. II, p. 53–54.

The common law allows a property owner to be put on notice of an unsafe condition prior to attaching liability. He must be negligent. Restatement (Second) of Torts § 343 (1965) reads as follows:

Dangerous Conditions Known to or Discoverable by Possessor
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect against the danger.[3]

---

[3]Comments to Restatement § 343, read in part, as follows:

"b. Distinction between duties to licensee and invitee. One who holds his land open for the reception of invitees is under a greater duty in respect to its physical condition than one who permits the visit of a mere licensee. . . . an invitee enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception. He is therefore entitled to expect that the possessor will exercise reasonable care to make the land safe for his entry, or for his use for the purposes of the invitation. He is entitled to expect such care not only in the original construction of the premises, and any activities of the possessor or his employees which may affect their condition, but also in inspection to discover their actual condition and any latent defects, followed by such repair, safeguards, or warning as may be reasonably necessary for his protection under the circumstances.

". . . To the invitee the possessor owes not only this duty, but also the additional duty to exercise reasonable affirmative care to see that the premises are safe for the reception of the visitor, or at least to ascertain the condition of the land, and to give such warning that the visitor may decide intelligently whether or not to accept the invitation, or may protect himself against the danger if he does accept it.

". . . .

The plaintiff in a slip and fall case has traditionally had the burden of establishing that the proprietor's negligence was a cause in fact of his or her injury by showing that the proprietor had constructive notice of the specific dangerous condition:

> [W]here the negligence of a storekeeper or restaurateur is predicated upon his failure to keep his premises in a reasonably safe condition, it must be shown that the condition has either been brought to his notice or has existed for such time as would have afforded him sufficient opportunity, in the exercise of ordinary care, to have made proper inspection of the premises and to have removed the danger.

*Smith v. Manning's, Inc.,* 13 Wn.2d 573, 580, 126 P.2d 44 (1942), *quoted in Pimentel,* 100 Wn.2d at 44. *See also Presnell v. Safeway Stores, Inc.,* 60 Wn.2d 671, 675, 374 P.2d 939 (1962); Restatement (Second) of Torts § 343 (1965).

The constructive notice rule requires the plaintiff to establish how long the specific dangerous condition existed in order to show that the proprietor should have noticed it. Under the traditional rule, the lack of such evidence precludes recovery. *Brant v. Market Basket Stores,* 72 Wn.2d 446, 451–52, 433 P.2d 863 (1967); *Merrick v. Sears, Roebuck & Co.,* 67 Wn.2d 426, 429, 407 P.2d 960 (1965).

In *Brant,* a business invitee slipped and fell in the grocery store almost immediately upon entering because of an accumulation of water on the floor from weather conditions outside. The court, in affirming the trial court's dismissal, held that:

> ". . . An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein. . . .
>
> ". . . one entering a store, theatre, office building, or hotel, is entitled to expect that his host will make far greater preparations to secure the safety of his patrons than a householder will make for his social or even his business visitors. So too, one who goes on business to the executive offices in a factory, is entitled to expect that the possessor will exercise reasonable care to secure his visitor's safety."

The plaintiff in this case has proven no more than that she slipped and fell on a wet floor and sustained certain injuries in consequence thereof. Our cases indicate that something more must be proved to establish that the defendant had permitted a situation dangerous to its invitees to exist.

*Brant,* 72 Wn.2d at 451.

The facts in *Brant* are more analogous to the present case than the facts in *Pimentel.* Like *Brant,* the plaintiff here was injured when he slipped and fell in the defendant's grocery store. There was no evidence of notice, constructive or actual, on the part of the defendant. Further, in *Brant,* as here, the plaintiff failed to prove that the defendant "permitted a situation dangerous to its invitees to exist." *Brant,* 72 Wn.2d at 451. The rule should implant in store owners the incentive to exercise due care.

In *Kangley v. United States,* 788 F.2d 533 (9th Cir. 1986), the Ninth Circuit appreciated the "intolerable burden on businesses" by applying the rule in *Pimentel* to slip and fall type cases. *Kangley,* 788 F.2d at 535. As with *Brant, Kangley* is more analogous to the present case than *Pimentel.* In *Kangley,* the plaintiff slipped and fell at Madigan Army Hospital and was awarded damages by the District Court. In reversing, the court stated:

The general rule in Washington for injuries caused by a transitory unsafe condition on property is that the owner or occupier of a building is liable for the injuries if it or its employees caused the unsafe condition or if it has actual or constructive knowledge that an unsafe condition exists. *Pimentel v. Roundup Co.,* 100 Wash.2d 39, 44, 666 P.2d 888, 893 (1983); *Hemmen v. Clark's Restaurant,* 72 Wash.2d 690, 692, 434 P.2d 729, 732 (1967). Constructive knowledge exists if the unsafe condition has been present long enough that a person exercising ordinary care would have discovered it. *Pimentel,* 100 Wash.2d at 44, 666 P.2d at 893; *Hemmen,* 72 Wash.2d at 692, 434 P.2d at 732. The plaintiff has the burden of proving that the defendant had actual or constructive knowledge of the unsafe condition.

Further, Washington cases make it clear that the mere presence of water on a floor where the plaintiff slipped is not enough to prove negligence on the part of the owner or occupier of the building. *See, e.g., Brant v. Market Basket Stores,* 72 Wash.2d 446, 433 P.2d 863 (1967); *Merrick v. Sears Roebuck & Co.,* 67 Wash.2d 426, 407 P.2d 960 (1965). To prove

negligence, the plaintiff must prove that water makes the floor dangerously slippery and that the owner knew or should have known both that water would make the floor slippery and that there was water on the floor at the time the plaintiff slipped. *See Brant,* 72 Wash.2d at 451–52, 433 P.2d at 866–67.

. . . .

The court's finding on this issue raises two questions for our review: (1) Whether the government actually knew that a dangerous condition existed or (2) whether the government had constructive knowledge of the existence of a dangerous condition. We review both of these questions for clear error. The first is a question of fact. The second is a question of application of law to facts in which issues of fact predominate: did the condition exist long enough that it should have been discovered? . . ..

. . . .

The existence of a rug inside a door alone is not enough to establish that an owner or occupier knows the floor might be dangerous. *See Kalinowski v. YWCA,* 17 Wash.2d 380, 394–95, 135 P.2d 852, 859 (1943). The same is true of the fact that it is wet outside. If we were to hold that a person who slips inside a door where a mat has been placed on a day when it is wet outside may recover for injuries sustained without showing anything more, we would place an intolerable burden on businesses in areas like Tacoma where it is often wet outside. We are convinced that this is not the law in the state of Washington.

We hold that Kangley did not sustain her burden of proving that the government knew or should have known that a dangerous condition existed at the place and time she slipped and that the district court's finding that she had sustained that burden is clearly erroneous. . . .

(Footnote omitted.) *Kangley,* at 534–35.

*Pimentel* reaffirmed that most plaintiffs still need to show that a proprietor had actual or constructive notice of an unsafe condition. In creating an exception to this traditional rule, the court stated:

[W]here the operating procedures of any store are such that unreasonably dangerous conditions are continuous or reasonably foreseeable, there is no need to prove actual or constructive notice of such conditions in order to establish liability for injuries caused by them. . . .

. . . .

. . . This does not change the general rule governing liability for failure to maintain premises in a reasonably safe condition: the unsafe condition must either be caused by the proprietor or his employees, or the proprietor must have actual or constructive notice of the unsafe condition. Such notice need not be

shown, however, when the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable. This exception merely eliminates the need for establishing notice and does not shift the burden to the defendant to disprove negligence. The plaintiff must still prove that defendant failed to take reasonable care to prevent the injury.

*Pimentel,* 100 Wn.2d at 40, 49. We emphasized that this exception did not impose strict liability or even shift the burden to the defendant to disprove negligence. Rather, where the operation of a business is such that unreasonably dangerous conditions are continuous or reasonably foreseeable, it is unnecessary to prove the length of time that the dangerous condition had existed. The plaintiff can establish liability by showing that the operator of the premises had failed to conduct periodic inspections with the frequency required by the foreseeability of risk. *Pimentel,* 100 Wn.2d at 49.

*Pimentel* speaks to specific self–service operations and specific operating procedures of the store. *Pimentel* realized that certain departments of a store, such as the produce department, were areas where hazards were apparent and therefore the owner was placed on notice by the activity. Hence, the actual cause of the hazard is relevant in establishing whether the unreasonably dangerous condition was continuous or reasonably foreseeable because of the specific self–service operation. Because *Pimentel* is a limited rule for self–service operations, not a per se rule, the rule should be limited to specific unsafe conditions that are continuous or foreseeably inherent in the nature of the business or mode of operation. Risk of water dripping from a leaky roof is not inherent in a store's mode of operation.

*Once discovered,* the store must clean up the puddle resulting from a leaky roof as well as the puddle resulting from a leaky seltzer bottle, even though only the latter may be "inherent" to the nature and operation of its business. *See King v. Seattle,* 84 Wn.2d 239, 248, 525 P.2d 228 (1974) ("[l]iability extends to foreseeable results from unforeseeable causes"). If a customer had knocked over merchandise

in the aisle and the next customer had immediately tripped over that merchandise, certainly the store owner should not be responsible without being placed on notice of the hazard. *See also Wells v. Vancouver,* 77 Wn.2d 800, 802–03, 467 P.2d 292 (1970); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 44, at 316–17 (5th ed. 1984).

A close reading of the record reveals that the puddle was located between two aisles. The plaintiff testified that:

Q: Could you describe that accident for the ladies and gentlemen of the jury?
A: I had just—I can't remember exactly what I had picked up in the aisle, but I had come around the end of the aisle and slipped in the water on the floor. It was *between the two aisles* as you go to the back of the store. . . .

(Italics ours.) Report of Proceedings, vol. II, p. 13. The dairy case has no bearing on the determination of this case.

The jury instruction given by the trial court was the proper one for this set of circumstances. The jury was given the instruction from Washington Pattern Jury Instruction 120.06.02. That instruction states:

In order to support a finding of negligence, a temporary unsafe condition of the premises *which was not created by defendant or defendant's employees, [and which was not caused by negligence on defendant's part,]* must have either been brought to the actual attention of defendant or defendant's employees or it must have existed for a sufficient length of time and under such circumstances that defendant or defendant's employees should have discovered it in the exercise of ordinary care.

WPI 120.06.02; Clerk's Papers, at 106 (jury instructions). In the present case, the trial court gave the proper jury instruction regarding the attendant circumstances presented. Further, there was no factual basis for the court to give a *Pimentel* instruction.

The trial court is affirmed and the Court of Appeals is reversed.

DOLLIVER, ANDERSEN, DURHAM, and SMITH, JJ., concur.

UTTER, J. (dissenting)—This case concerns the liability of a self-service grocery store for a puddle near a dairy case caused by a leak in the roof. The majority holds that not only the hazard itself, but also the specific cause must be foreseeable, and concludes the trial court did not err in instructing the jury that the plaintiff had the burden of proving actual or constructive notice of the puddle in defendant's store. Because the majority confuses the law and usurps the role of the jury, I dissent.

The unsafe condition in this case is a puddle of water on a smooth, rugless floor in defendant's self-service grocery store. The issue as to whether this puddle is an inherently foreseeable hazard within the meaning of *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 666 P.2d 888 (1983), should be left to the jury. In *Pimentel,* we held that plaintiffs need not establish either actual or constructive notice of reasonably foreseeable hazards in self-service establishments. 100 Wn.2d at 40. We explained that plaintiffs wishing to prove negligence without notice must show that the "nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable." *Pimentel,* 100 Wn.2d at 49. The specific cause of the hazard is not itself determinative. It is quite conceivable that a jury could find that a puddle caused by a leaking roof and located near a dairy display case is a reasonably foreseeable hazard within the definition of *Pimentel.* The trial court erred in failing to provide a *Pimentel* instruction.

The majority states there is no evidence that the leak in the roof resulted from defendant's negligence. Majority, at 454. However, the record contains *no* information at all as to what caused the leak. The majority correctly states the rule in *Pimentel,* but states that it is not applicable to this case because "the conditions which led up to the plaintiff's accident were neither continuous, reasonably foreseeable, nor . . . associated with the store's self-service mode of operation." Majority, at 454. In making such a finding, the majority unnecessarily limits the rule established in

*Pimentel* and usurps the role of the jury. Contrary to the majority's assertion, the hazard in this case can be labeled "inherent". The following facts reveal that a jury could find that the conditions which led to plaintiff's accident were associated with Albertson's self-service mode of operation.

As part of its method of operation, Albertson's creates displays that are designed to attract the customer's attention to specific sales or products. Partial Report of Proceedings, vol. I, at 48–49. The puddle was located about a foot and a half away from the corner of a display at the end of an aisle near the dairy case. Partial Report of Proceedings, vol. II, at 13–14. Plaintiff testified he thought his cart went down the produce aisle when he fell. Partial Report of Proceedings, vol. I, at 13. One of defendant's employees testified that there are times when there is some sort of water or liquid on the floor. Partial Report of Proceedings, vol. II, at 8. It is not difficult to imagine a shopper, distracted by displays, pushing a shopping cart in front of him, rounding a corner of an aisle, and slipping in unseen water. The specific cause of the puddle should not be determinative. Where the hazard is likely and the store makes every effort to direct the customer's attention away from the floor, the *Pimentel* exception applies.

The majority concludes that defendant had no notice of the puddle because two of its employees happened to walk by the area about 10 minutes or so before the accident, and neither one noticed any water on the floor. However, neither of these employees *inspected* the area, nor were they looking for any unsafe conditions. One was on her way to clock out at the end of her shift, the other was on his way to pick up some transmittals. The majority's analysis confuses the duty and causation elements. The majority states that the plaintiff traditionally has the burden to establish a proprietor's negligence as a cause in fact of an injury by showing constructive notice. Majority, at 458. Constructive notice relates to duty, not to causation: it triggers the duty to remove the hazard. *See Presnell v. Safeway Stores, Inc.,*

60 Wn.2d 671, 673, 374 P.2d 939 (1962); *see also* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Torts* § 60, at 417 (5th ed. 1984). Regardless of the cause, the proprietor's duty—to respond to all reasonably foreseeable hazards—is not eliminated. *Pimentel* eliminates the notice requirement in a case such as this, and allows a jury to consider the nature of the defendant's business, the methods of operation, and whether the unsafe condition is reasonably foreseeable. This exception does not shift the burden and the plaintiff must still prove that defendant failed to take reasonable care to prevent the injury. *Pimentel,* 100 Wn.2d at 49. As the majority properly notes, "'[l]iability extends to foreseeable results from unforeseeable causes'". Majority, at 461 (quoting *King v. Seattle,* 84 Wn.2d 239, 248, 525 P.2d 228 (1974)).

The majority claims that the Ninth Circuit has recognized that application of *Pimentel* to slip and fall cases would place "an intolerable burden on businesses". This can only be construed as a confused argument that *Pimentel* should be overruled. The Ninth Circuit did not discuss the *Pimentel* "inherently foreseeable" exception in *Kangley v. United States,* 788 F.2d 533 (9th Cir. 1986), the case cited by the majority in support of this proposition. Neither *Kangley* nor the facts of this case can be cited as authority for overruling *Pimentel.* The facts of the present case show that the condition which caused the plaintiff's injury could be found to be inherently foreseeable.

The *Brant* case cited by the majority does not preclude use of a *Pimentel* instruction in this case. *Brant v. Market Basket Stores,* 72 Wn.2d 446, 433 P.2d 863 (1967). In *Brant,* there was no testimony that the water had made the floor slippery, therefore the court found the defendant had not permitted a dangerous condition to exist in the store. 72 Wn.2d at 448, 452. The majority finds the plaintiff in the present case failed to prove that the defendant "'permitted a situation dangerous to its invitees to exist", just like the plaintiff in *Brant.* Majority, at 459. The majority forgets that we are not the jury in this case. The parties have asked

us to determine whether the trial court properly refused a jury instruction which would have allowed the plaintiff to prove his case by showing that this particular hazard was reasonably foreseeable given the nature of defendant's business and its mode of operation. Our unanimous decision in *Pimentel* requires such an instruction in this case.

DORE, C.J., BRACHTENBACH, J., and PEARSON, J. Pro Tem., concur with UTTER, J.