[No. 13770-8-III.   Division Three.   June 27, 1995.]

JEANNE CARLYLE, *Appellant*, v. SAFEWAY STORES, INC., ET AL., *Respondents*.

---

[2]*State v. Pascal*, 108 Wn.2d 125, 736 P.2d 1065 (1987); *State v. Nelson, supra.*

*Daniel J. Hess* and *Minnick & Hayner*, for appellant.

*John G. Schultz* and *George Fearing* and *Leavy, Schultz & Davis*, for respondents.

SCHULTHEIS, J. — Jeanne Carlyle commenced this personal injury action after she slipped and fell in a Safeway store. The court granted summary judgment and dismissed the complaint because Ms. Carlyle failed to produce facts showing Safeway had actual or constructive notice of the unsafe condition, or that the unsafe condition was reasonably foreseeable, or that Safeway failed to take reasonable care to prevent the injury. Ms. Carlyle contends summary judgment was inappropriate because the questions of foreseeability and the adequacy of Safeway's housekeeping procedures are issues for the trier of fact. We affirm.

Shortly before 10:55 p.m. on April 27, 1989, Ms. Carlyle slipped and fell while shopping in the Rose Street Safeway store in Walla Walla. As she stepped forward and reached for a container of coffee on the top shelf of the coffee section, her right foot slipped out from under her. The supervisor on duty discovered she had stepped into a quarter-sized spot of shampoo. Although shampoo was stocked several aisles away, there was a bottle lying on the floor of the coffee section, partially under the four-inch overhang of the bottom shelf. The bottle was full and its screw cap was closed, but the cap's pop-top was open.

In April 1992, Ms. Carlyle filed a complaint for personal injuries against Safeway. Safeway moved for summary judgment in May 1993. The court granted the motion and entered judgment in November 1993. Ms. Carlyle appeals.

■ When reviewing an order of summary judgment, this court engages in the same inquiry as the trial court. RAP 9.12; *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". CR 56(c). A defendant may meet its initial burden of showing the absence of genuine factual issues by challenging the sufficiency of the plaintiff's evidence supporting an element essential to the plaintiff's claim. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

Here, Safeway met its burden by showing an absence of evidence to prove it either created the dangerous condition or had actual or constructive notice of its existence. *Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 652, 869 P.2d 1014 (1994). The burden then shifted to Ms. Carlyle to show the existence of a genuine issue of material fact. *Ingersoll*, at 654; *Young*, at 225. This, she did not do.

█ █ To impose liability for failure to maintain business premises in a reasonably safe condition generally requires the plaintiff to prove (1) the unsafe condition was caused by the proprietor or its employees, or (2) the proprietor had actual or constructive notice of the dangerous condition. *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 49, 666 P.2d 888 (1983). Ms. Carlyle never alleged Safeway or its employees caused the shampoo spill and she concedes Safeway did not have actual notice of it. Because there was no evidence the spill had been on the floor for a long enough time to afford Safeway a sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection and to have removed the hazard, Ms. Carlyle could not prove constructive notice. *Ingersoll*, at 652; *Wiltse v. Albertson's, Inc.*, 116 Wn.2d 452, 458, 805 P.2d 793 (1991). Traditionally, the lack of such evidence precludes recovery, *Wiltse*, at 458; however, the requirement of proving notice is eliminated under a narrow exception to the general rule.

> [W]here the operating procedures of any store are such that unreasonably dangerous conditions are continuous or reasonably foreseeable, there is no need to prove actual or constructive notice of such conditions in order to establish liability for injuries caused by them. . . .
>
> . . . .
>
> . . . This does not change the general rule governing liability for failure to maintain premises in a reasonably safe condition: the unsafe condition must either be caused by the proprietor or his employees, or the proprietor must have actual or constructive notice of the unsafe condition. Such notice need not be shown, however, when the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable. This exception merely eliminates the need for establishing notice and does not shift the burden to the defendant to disprove negligence. The plaintiff must still prove that defendant failed to take reasonable care to prevent the injury.

*Wiltse*, at 460-61 (quoting *Pimentel*, at 40, 49).

Because the leaking shampoo bottle in the coffee section arose out of the self-service operations of the store, Ms. Carlyle argues the *Pimentel* exception creates a question of fact. Specifically, she contends that questions remain for the jury whether the dangerous condition presented by the leaking bottle was reasonably foreseeable and whether Safeway's housekeeping procedures were adequate. *Coleman v. Ernst Home Ctr., Inc.*, 70 Wn. App. 213, 218, 222, 853 P.2d 473 (1993).

Ms. Carlyle interprets the *Pimentel* rule too broadly. The *Pimentel* exception is a limited rule for self-service operations which applies only to specific unsafe conditions that are continuous or foreseeably inherent in the nature of the business or mode of operation. *Ingersoll*, at 653; *Wiltse*, at 461. Certain departments of a store, such as the produce department, are areas where hazards are apparent and therefore the proprietor is placed on notice by the activity. *Wiltse*, at 461. The plaintiff can then establish liability by showing the operator of the premises had failed

to conduct periodic inspections with the frequency required by the foreseeability of the risk. *Wiltse*, at 461; *Pimentel*, at 49. The *Pimentel* rule does not apply to the entire area of a store in which customers serve themselves, however; there must be a relation between the hazardous condition and the self-service mode of operation of the business. *Ingersoll*, at 653-54.

■ Under Ms. Carlyle's interpretation, all complaints arising out of slip and fall accidents in self-service establishments would be immune from summary judgment. That is clearly contrary to the narrow interpretation adopted by the Supreme Court in *Pimentel*, *Wiltse* and *Ingersoll*. *Ingersoll*, at 653-54, notes that even if the injury occurs in the self-service department of a store, this alone does not compel application of the Pimentel rule. The rule applies only "if the unsafe condition causing the injury is 'continuous or foreseeably inherent in the nature of the business or mode of operation' ". Ingersoll, at 653-54 (quoting *Wiltse*, at 461).

The court in *Ingersoll*, also a slip and fall case, upheld a summary judgment for the defendants, stating:

> The record shows that plaintiff has failed to produce any evidence *from which the trier of fact could reasonably infer* that the nature of the business and methods of operation of the [defendant] are such that unsafe conditions are reasonably foreseeable in the area in which she fell.

(Italics ours.) *Ingersoll*, at 654. Ms. Carlyle, too, has failed to produce any evidence from which it could reasonably be inferred that the nature of Safeway's business and its methods of operation are such that unsafe conditions are reasonably foreseeable in the area in which she fell. The mere presence of a slick or slippery substance on a floor is a condition that may arise temporarily in any public place of business. Under *Pimentel*, *Wiltse*, and *Ingersoll*, something more is needed. Because there was insufficient evidence to apply the *Pimentel* exception, she needed to produce evidence of actual or constructive notice. *Ingersoll*, at 655; *Pimentel*, at 49. This, too, she failed to do.

Two Safeway employees who performed supervisory duties both testified in their depositions that on average they found one dropped or spilled item in the store per eight- to nine-hour shift. They both were in the habit of inspecting the store's perimeter and aisles hourly. Their best estimates of the least number of times they would physically inspect each aisle in a shift would be two or three, when they were unusually busy with other chores. Laura Webb testified that at the time of the accident, the produce area was the messiest and the rest of the store usually stayed pretty clean. William Scotson, who was the supervisor on duty the night of the accident, also paid particular attention to the produce department because "[s]tuff in produce is slippery". Mr. Scotson was aware of 10 to 12 accidents involving falls during the 11 years he had been at the store, an average of one per year. Ms. Webb recalled only one accident during the time she worked as a supervisor, a slip and fall in the produce area. Coffee was stocked on aisle 11 and shampoo was stocked on aisle 6; neither was located in the produce section. These facts do not raise an issue that unsafe conditions are reasonably foreseeable in the area where Ms. Carlyle fell.

Safeway's housekeeping practices are relevant to the issue of constructive notice, but there is no basis for submitting the issue to a jury unless there is some evidence from which it could infer that hourly inspections (or even two or three inspections per eight- to nine-hour shift) were not adequate because the risk of spilled shampoo in the coffee aisle required greater vigilance. *Coleman*, at 222-23. Ms. Carlyle presented no such evidence.

Citing *Wardhaugh v. Weisfield's, Inc.*, 43 Wn.2d 865, 870-71, 264 P.2d 870 (1953), Ms. Carlyle argues separately that she does not need to establish actual or constructive notice because the design of the store's shelves, together with its placement of products and advertising signs on those shelves, created a continuing deceptive condition that caused her injuries. She did not plead negligence

based on this theory. More importantly, she presents no facts supporting her argument. She did not state that she was distracted by the products, the shelves or the advertising. She wanted coffee from the top shelf. She stepped toward the shelf as she reached for the coffee. She did not catch her foot in the overhang, she slipped on shampoo in the aisle. She never saw the shampoo; in fact, she testified she never really paid attention to the floor until after she fell. There are no facts from which it could be inferred that anything but a transitory condition caused her fall.

Affirmed.

THOMPSON, C.J., and MUNSON, J., concur.

Review denied at 128 Wn.2d 1004 (1995).