# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| HELEN KATHLINE SULLIVAN, an individual, | ) ) ) | No. 71638-7-I |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| SAFEWAY, INC., | ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) ) | FILED: April 27, 2015 |

VERELLEN, A.C.J. — Helen Sullivan slipped and fell on liquid detergent in a grocery store and suffered injuries. She sued the store, claiming that her injuries "were caused by [the store's] failure to maintain and take reasonable steps to ensure the safety of their property."[1] The superior court dismissed the suit on summary judgment. We affirm.

## FACTS

On April 9, 2012, Sullivan went grocery shopping at a Safeway store in Everett, Washington. While walking down an aisle stocked with paper towels, toilet paper, and liquid cleaning products, she slipped and fell on liquid soap spilled by another customer. Sullivan stated in a deposition that the pool of liquid was green and "huge" but she did not see it because she was looking at the store shelves before the accident.[2]

---

[1] Clerk's Papers at 61.

[2] Clerk's Papers at 52.

In July 2013, Sullivan sued Safeway for injuries she suffered in the fall. Safeway moved for summary judgment, arguing that there were no issues of fact as to whether it caused the spill or failed to use ordinary care in response to it. In support, Safeway submitted several declarations.

The store manager, Gwynn Graika, stated in her declaration that she was surprised Sullivan slipped on the detergent "because it was a very large, noticeable puddle that was dark green in color with a bottle sitting in the middle of it."[3] The spill spanned the width of the aisle and was "obvious" to Graika as soon as she entered the aisle.[4]

Graika said the aisle where Sullivan slipped, aisle 9, "was a very safe aisle."[5] She could not recall any other accidents, spills, or safety problems on that aisle during the eight years she managed the store. Graika also described the store's safety training and procedures:

> While I was manager of the store[,] employees were instructed to pay attention to the floors and look for any foreign objects on the floor as they went about their work in the store. Employees were instructed to pick up or clean up any foreign objects on the floor immediately when they saw them. On average throughout the day, an employee would be on [a]isle 9 at least 1-2 times per hour during the course of their work, either helping customers find products, stocking products, or traveling from one part of the store to another. In addition, at the time of Ms. Sullivan's accident[,] we had employees do an inspection of the entire store approximately twice per hour, checking for cleanliness and for any potential safety hazards, including foreign objects on the floor.

> On April 9, 2012, . . . the first notice Safeway had of any problem on [a]isle 9 was when the customer who spilled the soap notified Chloe Thompson of the spill.[6]

---

[3] Clerk's Papers at 31-32.

[4] Clerk's Papers at 32.

[5] Clerk's Papers at 7.

[6] Clerk's Papers at 8.

2

Chloe Thompson stated in her declaration that on the day of the spill, a customer told her that she had spilled a bottle of liquid soap on aisle 9. Thompson "went straight to the phone and announced over the store intercom that there had been a spill on [a]isle 9 and we needed a clean-up on that aisle."[7] When she finished the announcement, Thompson saw employee Cindy Ward heading to aisle 9 with equipment to clean up the spill. Thompson then repeated her intercom announcement that there had been a spill on aisle 9.

A store video corroborated Graika and Thompson's declarations. It showed a female customer reporting the spill to Thompson at 12:56. Approximately 30 seconds later, Sullivan can be seen entering aisle 9. After another 30 seconds, Cindy Ward can be seen heading toward aisle 9 with cleaning supplies.

In her response to Safeway's motion for summary judgment, Sullivan argued that, given the nature of Safeway's self-service business, the spill was foreseeable and Safeway was liable if it failed to conduct periodic inspections commensurate with the foreseeability of risk. Noting that the evidence did not establish how much time elapsed between the spill and the customer's reporting of it to Thompson, Sullivan maintained that the adequacy of Safeway's inspections was a question for the jury.

The court granted Safeway summary judgment. Sullivan appeals.

## DECISION

The sole issue on appeal is whether the court erred in granting summary judgment. This court reviews a grant of summary judgment de novo, undertaking the same inquiry as

---

[7] Clerk's Papers at 29.

the court.[8]  Summary judgment is proper if, viewing the facts and reasonable inferences most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[9]

Sullivan contends summary judgment was improper given the nature of Safeway's business and the evidence before the court.  She concedes that a proprietor is generally not liable for a temporary unsafe condition on its premises absent notice of the condition and failure to exercise ordinary care in response to such notice.  And she does not contend that Safeway failed to exercise ordinary care after it learned of the spill.  Instead, citing Pimentel v. Roundup Co., she points out that an exception to the general rule applies "when the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable."[10]  In such circumstances, liability may be established "by showing that the operator of the premises had failed to conduct periodic inspections with the frequency required by the foreseeability of risk."[11]  Sullivan contends the spill in this case falls within the Pimentel exception and that evidence before the court created an issue of fact as to whether Safeway conducted adequate inspections prior to the accident.  We disagree.

"The Pimentel exception is a narrow one, limited to specific unsafe conditions in specific areas that are inherent in the nature of self-service operations."[12]  The exception

---

[8] Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300, 45 P.3d 1068 (2002).

[9] CR 56(c); Versuslaw, Inc. v. Stoel Rives, LLP, 127 Wn. App. 309, 319, 111 P.3d 866 (2005).

[10] 100 Wn.2d 39, 49, 666 P.2d 888 (1983).

[11] Wiltse v. Albertson's, Inc., 116 Wn.2d 452, 461, 805 P.2d 793 (1991).

[12] Arment v. Kmart Corp., 79 Wn. App. 694, 698, 902 P.2d 1254 (1995).

does not apply to all areas where customers serve themselves.[13] It only applies where the risk of injury is "'continuous or foreseeably inherent in the nature of the business or mode of operation.'"[14] The plaintiff has the burden of proving that his or her case falls within this narrow exception.[15] To invoke the exception, "a plaintiff must present some evidence that the unsafe condition in *the particular location* of the accident was reasonably foreseeable."[16] Sullivan did not satisfy this burden.

Sullivan submitted no evidence demonstrating a continuous or foreseeably inherent risk of injury in the area of the accident. There was no evidence of prior accidents in that area. In fact, the evidence affirmatively showed an absence of accidents on aisle 9. To the extent Sullivan claims the mere presence of liquid products on aisle 9 was sufficient to invoke the Pimentel exception, she is mistaken. The presence of liquid products does not demonstrate that a risk of unsafe conditions—in this case, liquid spills—is continuous or foreseeably inherent on aisle 9.[17] Unlike self-service cases where the evidence showed such continuous or inherent risks,[18] there was no evidence that the liquids on aisle 9

---

[13] Ingersoll v. DeBartolo, 123 Wn.2d 649, 653, 869 P.2d 1014 (1994).

[14] Id. (quoting Wiltse, 116 Wn.2d at 461).

[15] Id. at 654.

[16] Arment, 79 Wn. App. at 698 (emphasis added).

[17] See Tavai v. Walmart Stores, Inc., 176 Wn. App. 122, 132, 308 P.3d 811 (2013) (court holding that "[t]he mere fact that Walmart sells liquids is insufficient to meet the Pimentel exception," and noting that "drinks in question were sold in sealed bottles, not open cups").

[18] See Carlyle v. Safeway Stores, Inc., 78 Wn. App. 272, 276, 896 P.2d 750 (1995) (noting that '[c]ertain departments of a store, such as the produce department, are areas where hazards are apparent and therefore the proprietor is placed on notice by the activity"); O'Donnell v. Zupan Enters., Inc., 107 Wn. App. 854, 859-60, 28 P.3d 799 (2001) (plaintiff presented evidence showing that nature of check-out operations made it reasonably foreseeable that grocery items would fall on the floor and create a hazard).

frequently fell on the floor or that they were in containers that were breakable or otherwise likely to spill if they fell onto the floor. Sullivan simply failed to produce evidence justifying application of the Pimentel exception.

Even if Sullivan had produced such evidence, she failed to demonstrate an issue of fact as to whether Safeway conducted inspections with the frequency required by the foreseeability of risk.[19] As previously noted, there was no history of accidents on aisle 9. Thus, the risk of accidents at that location in the store was low. Given the low risk, Safeway's practice of two inspections per hour, together with evidence that other employees would, on average, be present in the aisle an additional one to two times per hour, was sufficient to satisfy its duty of care as a matter of law.

We affirm the order of summary judgment.

WE CONCUR:

---

[19] Pimentel, 100 Wn.2d at 49.