# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MARTY MOORE, as personal representative of the Estate of Rebecca Moore, | No. 56950-7-II |
| Appellant, | |
| v. | |
| FRED MEYER STORES, INC., a foreign corporation, registered and doing business in Washington; FRED MEYER, INC., a corporation, registered and doing business in Washington; THE KROGER CO., a foreign corporation, registered and doing business in Washington; each of them d/b/a FRED MEYER; and BLACK AND WHITE I-V, businesses licensed to conduct business in the state of Washington, DOES I-V, employees and/or agents of defendants FRED MEYER, INC., | ORDER GRANTING MOTION TO PUBLISH |
| Respondents. | |

Appellant moves for publication of the Court's May 2, 2023, opinion. Upon consideration, the Court grants the motion to publish. Accordingly, it is

**SO ORDERED.**

**PANEL:** Jj. MAXA, VELJACIC, PRICE

**FOR THE COURT:**

_____
PRICE, J.

Filed
Washington State
Court of Appeals
Division Two

May 2, 2023

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| MARTY MOORE, as personal representative of the Estate of Rebecca Moore,<br><br>Appellant,<br><br>v.<br><br>FRED MEYER STORES, INC., a foreign corporation, registered and doing business in Washington; FRED MEYER, INC., a corporation, registered and doing business in Washington; THE KROGER CO., a foreign corporation, registered and doing business in Washington; each of them d/b/a FRED MEYER; and BLACK AND WHITE I-V, businesses licensed to conduct business in the state of Washington, DOES I-V, employees and/or agents of defendants FRED MEYER, INC.,<br><br>Respondents. | No.  56950-7-II<br><br><br><br>UNPUBLISHED OPINION |

PRICE, J. — Marty Moore, as personal representative of the estate of Rebecca Moore, appeals the judgment entered in favor of Fred Meyer Stores Inc. following a defense jury verdict in this personal injury case.[1]  Marty argues that the trial court erred by refusing to give his proposed instruction on notice and by giving, instead, Fred Meyer's proposed instruction on notice. Following our Supreme Court's opinion in *Johnson v. Liquor & Cannabis Board*, 197 Wn.2d 605,

---

[1] Because the Moores share the same last name, we refer to them by their first names for clarity. We intend no disrespect.

No. 56950-7-II

486 P.3d 125 (2021), the trial court's instructions were a misstatement of the law. Accordingly, we reverse the jury's verdict and remand for further proceedings consistent with this opinion.

FACTS

On August 5, 2019, Rebecca filed a complaint for damages against Fred Meyer. The complaint alleged that Rebecca was injured after she slipped and fell while shopping in a Fred Meyer store. Prior to trial, Rebecca passed away and Marty, the personal representative of Rebecca's estate, was substituted as a plaintiff. The case proceeded to a jury trial.

Rebecca's deposition testimony was read to the jury. Rebecca testified that in August 2016, she went shopping at the Fred Meyer in Sumner. It was sunny when she went to the store. After Rebecca entered the Fred Meyer, she went to the coffee and cereal aisle. Rebecca was walking down the aisle a few steps behind two women shopping with a child. As she was walking down the aisle, she slipped in a puddle of water and landed on her side. Rebecca did not see anything on the floor besides a puddle of water. Rebecca also testified that there were paper towels and a folded-up, yellow, plastic wet floor sign on the store shelf near where she fell. Rebecca did not know where the water came from or how it got on the floor.

After Rebecca fell, one of the women in front of her left to get the attention of a Fred Meyer employee. The employee helped Rebecca up and gave her some paper towels to dry the water off her arm. Then the employee went to get a manager. Rebecca testified that she sat with the manager for approximately 10 minutes, filling out an incident report. Rebecca then drove herself home from the Fred Meyer. Later, Rebecca went to urgent care.

Ryan Johnson testified at trial. In August 2016, Johnson was an assistant grocery manager at the Sumner Fred Meyer. Johnson testified that he was notified by a cashier that a customer had

3

No. 56950-7-II

fallen while shopping. He went to speak to the customer he later learned was Rebecca. When Johnson contacted Rebecca, she was no longer in the aisle of the fall, and he asked her if she was okay. Rebecca said that she was. After speaking with Rebecca, Johnson went to the aisle to look for the spill, but the water had already been cleaned up. A few days later, Johnson completed an incident report.

Johnson explained that the aisle where Rebecca fell contained both whole and ground coffee as well as breakfast cereal. According to Johnson, there were only dry goods on either side of the aisle. There were no refrigerated cases, freezers, or coolers in any of the nearby aisles. There was also no water stocked in the coffee and cereal aisle.[2]

Fred Meyer proposed a pattern jury instruction on liability which included an actual or constructive notice requirement:

> An owner of premises is liable for any physical injuries to its business invitees caused by a condition on the premises if the owner:
>
> *(a) knows of the condition or fails to exercise ordinary care to discover the condition, and should realize that it involves an unreasonable risk of harm to such business invitees*;
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and
>
> (c) fails to exercise ordinary care to protect them against the danger; and
>
> (d) the dangerous condition is within those portions of the premises that the invitee is expressly or impliedly invited to use or might reasonably be expected to use.

---

[2] Johnson's testimony also casts doubt on whether any wet floor sign could have been on a nearby shelf as described by Rebecca. Johnson explained that the standard wet floor signs are three legs that open up into a cone shape known as caution cones. The caution cones are the only type of wet floor signs that Johnson had ever seen in Fred Meyer stores. Caution cones are kept in tubes at various places throughout the store. Johnson testified that he did not believe a caution cone could fit on a store shelf.

4

No. 56950-7-II

Clerk's Papers (CP) at 124 (emphasis added). Based on *Pimentel*[3] and *Johnson*, Marty proposed

a modified version of the instruction that changed the language in only section (a) of the instruction

to include reasonable foreseeability, rather than actual or constructive notice:

> (a) the nature of the proprietor's business and its methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable;

CP at 155.

In its ruling on the jury instructions, the trial court first explained its understanding of the

case law, including its view of the effect of the recent *Johnson* case:

> Just by way of reminder, what *Johnson* did -- what the holding in *Johnson* did was remove the self-service aspect of what *Piment[e]l* created so many years ago. *Johnson* did not change the traditional rule of notice.

Verbatim Rep. of Proc. (VRP) (Oct. 28, 2021) at 326. Then the trial court reviewed the evidence

to determine whether giving the instruction based on *Johnson* was appropriate. The trial court

recognized there was some evidence establishing that Fred Meyer was aware that slips and falls

were a general risk inside the store, but it ruled that the evidence did not support giving the

instruction based on *Johnson* because Moore did not establish the water on the floor was related

to the store's business and its method of operation. The trial court gave Fred Meyer's proposed

pattern instruction with its traditional standard of actual or constructive notice.

The jury returned a verdict finding that Fred Meyer was not negligent.

Marty appeals.

---

[3] *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 666 P.2d 888 (1983).

No. 56950-7-II

ANALYSIS

Marty argues that the trial court's jury instructions were a misstatement of the law. We agree that the trial court's jury instructions were not an accurate statement of the law following our Supreme Court's opinion in *Johnson*. Accordingly, we reverse.

"Jury instructions are generally sufficient if they are supported by the evidence, allow each party to argue its theory of the case, and, when read as a whole, properly inform the trier of fact of the applicable law." *Helmbreck v. McPhee*, 15 Wn. App. 2d 41, 57, 476 P.3d 589 (2020), *review denied*, 196 Wn.2d 1047 (2021). We review a trial court's instructions for legal error de novo. *Id.*

Traditional standards of premises liability require proof of actual or constructive notice of a dangerous condition. *Johnson*, 197 Wn.2d at 612. "Actual notice is the same as 'knowing' that the condition exists." *Id.* " 'Constructive notice arises where the condition has existed for such time as would have afforded [the proprietor] sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger.' " *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 652, 869 P.2d 1014 (1994)).

In *Pimentel*, our Supreme Court created an exception to the notice requirement for self-service areas of stores. 100 Wn.2d at 49-50. The *Pimentel* court "held that when an invitee is injured at a self-service business, the traditional notice requirement is eliminated 'when the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable.' " *Johnson*, 197 Wn.2d at 613 (quoting *Pimentel*, 100 Wn.2d at 49). However, the *Pimentel* court expressly limited the exception, stating that "the requirement of showing notice will be eliminated only if the particular self-service

6

No. 56950-7-II

operation of the defendant is shown to be such that the existence of unsafe conditions is reasonably foreseeable." *Pimentel*, 100 Wn.2d at 50.

In *Johnson*, our Supreme Court analyzed whether the self-service aspect was a necessary requirement for the reasonable foreseeability exception identified in *Pimentel* to apply. 197 Wn.2d at 614. Our Supreme Court started by tracing the prior case law on the reasonable foreseeability exception. *Id.* at 614-18. First, in *Wiltse*, the court refused to apply the reasonable foreseeability exception to an unsafe condition that was not inherent in a store's mode of operation. *Id.* at 614 (citing *Wiltse v. Albertson's, Inc.*, 116 Wn.2d 452, 461, 805 P.2d 793 (1991)). Then, in *Ingersoll*, the court refused to expand the exception again because the Plaintiff " 'failed to produce any evidence from which the trier of fact could reasonably infer that the nature of the business and methods of operation of the mall are such that unsafe conditions are reasonably foreseeable in the area in which she fell.' " *Id.* at 615 (quoting *Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 654, 869 P.2d 1014 (1994)).

However, the *Johnson* court recognized that since *Ingersoll*, the foreseeability exception had been expanding. *Id.* at 616. In *Iwai*, the four-justice lead opinion eliminated the self-service requirement; the unsafe condition was required to be connected to the nature of the business and methods of operation but not necessarily connected to the self-service area of a store. *Id.* (citing *Iwai v. State*, 129 Wn.2d 84, 100, 915 P.2d 1089 (1996) (plurality opinion)). Further, the *Johnson* court noted that the one-justice concurrence "indirectly supported the expansion of the exception" by viewing the expansion of the reasonable foreseeability exception as unnecessary because it was already consistent with established rules of premises liability. *Id.* (citing *Iwai*, 129 Wn.2d at 103 (Alexander, J., concurring)).

7

No. 56950-7-II

Finally, the *Johnson* court recognized that the expansion of the reasonable foreseeability exception was completed by *Mucsi v. Graoch Associates Ltd. Partnership No. 12*, 144 Wn.2d 847, 31 P.3d 684 (2001). *Id.* at 617. The *Johnson* court endorsed *Musci*'s statement that " '[t]here must be evidence of actual or constructive notice *or foreseeability* . . . .' " *Id.* (quoting *Mucsi*, 144 Wn.2d at 863). The *Johnson* court recognized that *Mucsi* "indicated that upon remand the trial court *must* equally consider foreseeability of the condition as it would actual or constructive notice." *Id.* Based on its review of prior case law, the *Johnson* court concluded,

> Our precedent has made the exception from *Pimentel* into a general rule that an invitee may prove notice with evidence that the "nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable." 100 Wn.2d at 49. The self-service requirement of the exception no longer applies.

*Id.* at 618.

In applying reasonably foreseeability to the case in front of it, the *Johnson* court explicitly harmonized its current holding with *Wiltse*. *Id.* at 621. The *Johnson* court explained,

> This conclusion does not run afoul of *Wiltse*. There, we held that "[r]isk of water dripping from a leaky roof is not inherent in a store's mode of operation." *Wiltse*, 116 Wn.2d at 461. This, however, is distinct from the situation before us here. While water dripping from a leaky roof is entirely incidental to a business's operations, customers tracking water in through the entryway of a business where they are meant to enter the store is *not*: that *is* inherent in a store's mode of operation.

*Id.* (alteration in original).

8

No. 56950-7-II

Here, Marty argues that *Johnson* has eliminated actual or constructive notice altogether and replaced it with the reasonable foreseeability exception. In contrast, Fred Meyer argues that *Johnson* did nothing but recognize that the self-service requirement was no longer necessary to apply the reasonable foreseeability exception. We reject both Marty's overly broad and Fred Meyer's overly narrow reading of *Johnson*. Instead, viewing the opinion as a whole, *Johnson* establishes reasonable foreseeability as equal to traditional notice requirements and whether it applies is fundamentally a question of fact for the jury.

This requires revision of the jury instructions regarding the traditional requirement of notice. The current pattern instruction on premises liability provides,

> An *[owner of premises]* *[occupier of premises]* [_____ operator] is liable for any *[physical]* injuries to its *[business invitees]* *[public invitees]* *[customers]* caused by a condition on the premises if the *[owner]* *[occupier]* [_____ operator]:
>
> (a) knows of the condition or fails to exercise ordinary care to discover the condition, and should realize that it involves an unreasonable risk of harm to such *business invitees]* *[public invitees]* *[customers]*;

6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 120.07 (7th ed. 2022) (WPI). Following *Johnson*, this is no longer an accurate statement of the law because reasonable foreseeability is given equal consideration with the traditional notice requirements. Therefore, reasonable foreseeability—the nature of the proprietor's business and its method of operation are such that the existence of unsafe conditions on the premises is reasonably

9

No. 56950-7-II

foreseeable—should be included *alongside* rather than *in place of* the traditional notice requirements articulated in WPI 120.07.[4]

Further, the jury instructions as a whole must make clear that in order to be entitled to recovery under a reasonable foreseeability theory, there must be a connection between the unsafe condition and the business's method of operation—the unsafe condition may not be merely incidental to the business's method of operation. This required nexus is consistent with *Johnson*'s express reaffirmation of the holding in *Wiltse*.

Jury instructions that are consistent with our opinion reflect the law articulated in *Johnson*, that reasonable foreseeability is no longer an exception to traditional notice requirements but warrants equal consideration with traditional notice requirements.

The jury instructions given by the trial court were not an accurate statement of the law following *Johnson* (although we note that neither party in this case proposed accurate instructions). Because the jury instructions were not an accurate statement of the law, we reverse the jury's verdict. We remand to the trial court for further proceedings consistent with this opinion.

---

[4] Fred Meyer also argues that an instruction on reasonable foreseeability must be supported by substantial evidence, and there was no evidence supporting the jury instruction. However, although *Johnson* involved the question of whether the trial court erred by denying the defendant's motion for judgment as a matter of law, the opinion suggests that, if the plaintiff has presented sufficient evidence to have the case decided by a jury, then all three alternatives of actual notice, constructive notice, and reasonable foreseeability should be given equal consideration. *See Johnson*, 197 Wn.2d at 617-18 ("We thus indicated that upon remand the trial court *must* equally consider foreseeability of the condition as it would actual or constructive notice;" "Our precedent has made the exception from *Pimentel* into a general rule that an invitee may prove notice with evidence that the 'nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises in reasonably foreseeable.' " (quoting *Pimentel*, 100 Wn.2d at 49)). Here, because there was sufficient evidence for the case to go to the jury, consistent with *Johnson's* analysis of reasonable foreseeability, the jury should have given equal consideration to actual notice, constructive notice, and reasonable foreseeability.

No. 56950-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

MAXA, P.J.

VELJACIC, J.