246 P.3d 199 (2010)
158 Wash.App. 906
Pamela CHARLTON, Appellant,
v.
TOYS "R" USDELAWARE, INC., a Foreign Corporation, Respondent.
No. 28745-9-III.
Court of Appeals of Washington, Division 3.
November 4, 2010.
Publication Ordered December 16, 2010.
Reconsideration Denied December 16, 2010.
David Roger Hevel, Attorney at Law, Kennewick, WA, for Appellant.
Allison Kathleen Miller, Schwabe Williamson & Wyatt PC, Seattle, WA, for Respondent.
SIDDOWAY, J.
¶ 1 The superior court granted summary judgment dismissing Pamela Charlton's negligence claim against the defendant for injuries suffered when she slipped and fell in the wet entryway of a Toys R Us store. Ms. Charlton contends she should have been allowed a trial on disputed issues of whether water on a floor creates an unreasonably dangerous condition, and whether Toys R Us failed to exercise ordinary care to protect her from this danger. She also argues that it was Toys R Us's burden, not hers, to present evidence whether it had notice of the wet condition of the entry area where she fell. We agree with the trial court that Ms. Charlton failed to meet her burden of demonstrating a genuine issue of fact requiring trial, and affirm.

*200 FACTS AND PROCEDURAL BACKGROUND
¶ 2 In January 2008, Ms. Charlton slipped and fell within several feet of the front door to a Toys R Us store and injured her knee. It had snowed earlier that day and the night before. Ms. Charlton testified, "I . . . walked through the parking lot, which was extremely wet to the point where I believe my pants were wet." Clerk's Papers (CP) at 72-73. After entering the store, Ms. Charlton crossed two floor mats and then slipped and fell when she stepped off the second mat onto the floor.
¶ 3 Ms. Charlton did not allege that there was anything on the floor besides water. She did not see the water before her fall and could not describe the amount of water; she explained, "as I was going down, right at that second I saw it, you know, and then I was in it." Id. at 31. She also testified, "I know there was water there because my feet, you know, my feet wouldn't have slipped out from underneath me." Id. Ms. Charlton did not know how the water got onto the floor or how long it had been there before she entered the store. She did not know if the floor had been recently mopped or cleaned.
¶ 4 In April 2009, Ms. Charlton filed suit against Toys R Us. She alleged it was negligent for failing to keep its floors in a reasonably safe condition and failing to warn of the slippery condition of its floors, claimed she was injured as a result of the store's negligence, and sought compensation.
¶ 5 Following Ms. Charlton's deposition and other discovery, Toys R Us moved for summary judgment, arguing Ms. Charlton could demonstrate no facts suggesting it had breached its duty of care, and specifically, no evidence that an unsafe condition existed or that Toys R Us had actual or constructive notice of the unsafe condition.
¶ 6 In opposing the motion, Ms. Charlton did not present evidence that the floor surface, when wet, was slippery, or that Toys R Us had actual or constructive notice that water tracked in beyond the mat area created an unreasonable risk. She argued she was not required to demonstrate evidence that Toys R Us had actual or constructive notice of the allegedly unsafe floor because she was entitled to invoke an exception to notice requirement, first recognized in Pimentel v. Roundup Co., 100 Wash.2d 39, 666 P.2d 888 (1983). Pimentel modified the plaintiff's burden in cases involving stores whose self-service method of operation creates a continuous and reasonably foreseeable danger to its invitees.
¶ 7 Toys R Us replied that the Pimentel notice exception did not apply, because the water on the floor was not caused by the self-service mode of operation of its store, nor did Ms. Charlton slip in a self-service area.
¶ 8 The court granted the motion and dismissed Ms. Charlton's claims. She appeals.

ANALYSIS
¶ 9 At issue is whether Ms. Charlton presented sufficient evidence to survive the motion for summary judgment.
¶ 10 We engage in de novo review of an order of summary judgment, performing the same inquiry as the trial court. Lybbert v. Grant County, 141 Wash.2d 29, 34, 1 P.3d 1124 (2000). Summary judgment is proper if no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. CR 56(c). A defendant may move for summary judgment on the ground that plaintiff lacks competent evidence to support her claim. Young v. Key Pharms., Inc., 112 Wash.2d 216, 226, 770 P.2d 182 (1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts rebutting the moving party's contentions and disclosing that a genuine issue of material fact exists. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wash.2d 1, 12-13, 721 P.2d 1 (1986). When considering a summary judgment motion, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. Lybbert, 141 Wash.2d at 34, 1 P.3d 1124.
¶ 11 In November 2009, Toys R Us moved for summary judgment on the basis that Ms. Charlton lacked evidence to support her claim of negligence. It supported its motion *201 with deposition testimony establishing that Ms. Charlton did not know how water got on the floor of the entryway, how long the water had been on the floor, or when the floor had last been mopped and dried by store employees. She assumed that Toys R Us acted negligently simply from the fact that she slipped and fell.
¶ 12 Ms. Charlton's evidence filed in opposition to the motion included discovery responses in which Toys R Us, when asked about its understanding of what happened in "the occurrence," answered, in part:
There had been substantial snowfall in the area prior to the time of the alleged incident. [Toys R Us] cleared the snow from its entryway, and had two floor mats positioned near the entrance doors for customers to wipe and dry their shoes. Two large, yellow cones stating, "Caution, Wet Floor," were also posted throughout the store entryway to warn customers of any potential water that customers may have tracked in the store. Additionally, [Toys R Us] continually monitored the condition of the floor, mopping and drying the floor in the entryway as needed. Approximately five minutes prior to the incident, a [Toys R Us] employee mopped and dried the floor in the area where Plaintiff fell.
Plaintiff entered the store through the front entrance. She stopped near the service area desk where she stood on the all-season rug. When she stepped off the rug, she fell. Plaintiff's shoes were wet and the tread was full of snow. The legs of her pants were also wet. After Plaintiff fell, a [Toys R Us] employee discovered a small amount of water on the floor (3 inches in diameter) around the Plaintiff's shoes.
CP at 50. Ms. Charlton submitted portions of her deposition in which she testified that the floor was wet, and that she had seen no "Wet Floor" signs. She argued that the record before the trial court demonstrated Toys R Us's awareness that water was being tracked into the store from outside and a dispute over whether Toys R Us had placed warning signs near the entryway. She argued that her own testimony, that the floor was wet and that she fell, contradicted Toys R Us's position that it had mopped the area within the prior five minutes, thereby creating an issue of fact. She argued that the disputes over mopping and signs created issues of credibility requiring trial. Finally, she argued that she was not required to show anything more than this, contending that Toys R Us's method of operation "creat[ed] a continuous and reasonably foreseeable danger of puddles of water forming on the defendant's tile floor by having water tracked into the store by customers. Thus, the plaintiff is not required to prove that the defendant had notice of the particular puddle of water in which the plaintiff slipped." Id. at 37.
¶ 13 In reply, Toys R Us made clear that it was not relying for summary judgment on having mopped or posted cautionary signs, but solely on Ms. Charlton's inability to present evidence establishing the existence of a dangerous condition and that Toys R Us had actual or constructive notice.
¶ 14 In a negligence action, the plaintiff must prove the existence of a duty, breach of that duty, resulting injury, and proximate cause. Tincani v. Inland Empire Zoological Soc'y, 124 Wash.2d 121, 127-28, 875 P.2d 621 (1994). "Negligence is generally a question of fact for the jury, and should be decided as a matter of law only `in the clearest of cases and when reasonable minds could not have differed in their interpretation' of the facts." Bodin v. City of Stanwood, 130 Wash.2d 726, 741, 927 P.2d 240 (1996) (quoting Young v. Caravan Corp., 99 Wash.2d 655, 661, 663 P.2d 834, 672 P.2d 1267 (1983)). For negligence claims based on premises liability, Washington has adopted the standards set forth in the Restatement (Second) of Torts sections 343 and 343A (1965), dealing with a landowner's liability to invitees. Iwai v. State, 129 Wash.2d 84, 915 P.2d 1089 (1996). Restatement, supra, section 343 provides:
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

*202 (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.
¶ 15 Ms. Charlton argues that she demonstrated a genuine issue of fact that the floor of the Toys R Us entryway presented an unreasonable risk of harm to invitees. She points to her own testimony that the floor was either linoleum or tile, was wet, and she fell "`because there was no traction.'" Br. of Appellant at 3. She argues nothing more was required to demonstrate an issue of fact, because "everyone knows that a floor of vinyl or tile is slippery when wet." Id. at 9.
¶ 16 In Brant v. Market Basket Stores, Inc., 72 Wash.2d 446, 433 P.2d 863 (1967), the plaintiff slipped and fell inside a store within 8 to 12 feet of an entrance. Water was on the floor, having been tracked in by customers from outside, where it had been snowing. The court affirmed a summary judgment dismissal of the plaintiff's case, and in doing so quoted Shumaker v. Charada Inv. Co., 183 Wash. 521, 49 P.2d 44 (1935): "`A wet cement surface does not create a condition dangerous to pedestrians. It is a most common condition, and one readily noticed by the most casual glance.'" Brant, 72 Wash.2d at 450, 433 P.2d 863 (quoting Shumaker, 183 Wash. at 530-31, 49 P.2d 44). The court held that something more must be shown to establish that water makes a floor dangerously slippery. Id. at 448-49, 433 P.2d 863.
¶ 17 In Merrick v. Sears, Roebuck & Co., 67 Wash.2d 426, 407 P.2d 960 (1965), the Washington Supreme Court affirmed dismissal of a plaintiff's negligence claim at the close of the plaintiff's case where the plaintiff failed to provide evidence that the floor on which she fell was slippery. In that case, a Sears employee slipped and fell in the bathroom. In affirming dismissal, the court explained why the evidence was insufficient:
[N]o inference of negligence can be drawn either from the existence of a few drops of water on the rest room floor as described by one witness or that the floor felt wet to Mrs. Merrick's hand. Nor could an inference be drawn from her testimony alone that water was present in extraordinary quantities with the store's knowledge, under such circumstances as to charge the store with such knowledge. . . . Any idea of a negligently maintained washroom floor derived from such evidence would be no more than a guess or a huncha highly speculative conjecturefor no one testified that . . . the floor was in fact slippery.
Merrick, 67 Wash.2d at 429-30, 407 P.2d 960.
¶ 18 Ms. Charlton contends, however, that in Messina v. Rhodes Co., 67 Wash.2d 19, 406 P.2d 312 (1965), the court allowed the plaintiff to go to trial on facts indistinguishable from her case, and that Messina supports her position that "it is beyond question that a wet floor constitutes a dangerous condition." Br. of Appellant at 9. But Messina is distinguishable. In that case, the plaintiff slipped and fell in a department store on a rainy day; she and other witnesses testified there was quite a bit of muddy water on the floor caused by people tracking it in from outside. The court described the breach of duty as "permitting the floors to be covered with an unusual amount of dirt, sand, and water, thereby making the surface of the floor . . . highly slippery." Messina, 67 Wash.2d at 25, 406 P.2d 312. Later cases have reiterated that it was sand and mud tracked in with the water that created the dangerous condition in Messina, not the water by itself. See Brant, 72 Wash.2d at 451, 433 P.2d 863 (distinguishing Messina as involving an "`unusual amount of a foreign substance, to wit, dirt, sand, and water'" and that "[e]mphasis was placed on tracked-in mud" (quoting Messina, 67 Wash.2d at 21, 406 P.2d 312)). In Wiltse v. Albertson's Inc., 116 Wash.2d 452, 459-60, 805 P.2d 793 (1991), the Washington court cited with approval the following observations by the Ninth Circuit in Kangley v. United States, 788 F.2d 533, 534-35 (9th Cir.1986):
"Washington cases make it clear that the mere presence of water on a floor where the plaintiff slipped is not enough to prove negligence on the part of the owner or occupier of the building. To prove negligence, the plaintiff must prove that water makes the floor dangerously slippery and that the owner knew or should have known *203 both that water would make the floor slippery and that there was water on the floor at the time the plaintiff slipped.
. . . .
The existence of a rug inside a door alone is not enough to establish that an owner or occupier knows the floor might be dangerous. The same is true of the fact that it is wet outside."
(Citations omitted.)
¶ 19 Ms. Charlton complains that in dismissing her claim, the trial court erroneously held that a wet floor is never a dangerous condition, as a matter of law, and contends that this position is "absurd." Br. of Appellant at 7, 9. But Ms. Charlton has it backwardsthe trial court did not hold that water on a floor is never a dangerous condition; it rejected her position that a wet floor is always a dangerous condition, and that she was therefore excused from presenting evidence of an unreasonable risk created by this particular wet floor. She failed to present any evidence that the floor in the entryway of the Toys R Us store presented an unreasonable risk of harm when wet. For that reason alone, summary judgment was proper.
¶ 20 Toys R Us also relied for its summary judgment motion on Ms. Charlton's failure to present evidence that Toys R Us had actual or constructive notice of an unsafe accumulation of water beyond the mats. A plaintiff must establish that the defendant had, or should have had, knowledge of the dangerous condition in time to warn the plaintiff of the danger. Fredrickson v. Bertolino's Tacoma, Inc., 131 Wash.App. 183, 189, 127 P.3d 5 (2005) (citing Ingersoll v. DeBartolo, Inc., 123 Wash.2d 649, 652, 869 P.2d 1014 (1994)), review denied, 157 Wash.2d 1026, 142 P.3d 608 (2006). Ms. Charlton contends that the superior court erroneously decided this issue against her as well.
¶ 21 Ms. Charlton first argues, incorrectly, that Toys R Us had the initial burden of presenting evidence that it had no actual or constructive knowledge of the hazardous condition; from that she argues that because Toys R Us failed to do so, summary judgment was improper. Br. of Appellant at 10. While Toys R Us had the initial burden of showing the absence of an issue of material fact, it could do so by pointing out the absence of evidence to support Ms. Charlton's case. Young, 112 Wash.2d at 225 n. 1, 770 P.2d 182. Toys R Us demonstrated that Ms. Charlton could present no evidence that it knew or should have known of an unsafe accumulation of water beyond the mats. It was incumbent on her to present evidence of actual or constructive notice raising a genuine issue of fact.
¶ 22 Ms. Charlton also argues that she did not bear the burden of demonstrating that Toys R Us had notice in any event, asserting that the Washington Supreme Court's decision in Iwai "made it clear that no proof of actual or constructive knowledge is required when the defendant knows that it is wet outside."[1] Br. of Appellant at 11.
¶ 23 In Iwai, the court revisited the exception to the notice requirement first recognized in Pimentel, 100 Wash.2d 39, 666 P.2d 888. Pimentel established an exception to the notice requirement for hazards inherent in the nature of a self-service business or mode of operation, within areas where customers serve themselves. Iwai, 129 Wash.2d at 104, 915 P.2d 1089 (Guy, J., concurring and dissenting). A self-service area is a location where "customers serve themselves, goods are stocked, and customers handle the grocery items, or where customers otherwise perform duties that the proprietor's employees customarily performed." O'Donnell v. Zupan Enters., Inc., 107 Wash.App. 854, 859, 28 P.3d 799 (2001) (citing Coleman v. Ernst Home Ctr., Inc., 70 Wash.App. 213, 219, 853 P.2d 473 (1993)), review denied, 145 Wash.2d 1027, 42 P.3d 974 (2002). The exception has been applied exclusively to self-service type stores because, "in those situations, `[i]t is much more likely that items for sale and other foreign substances will fall to the floor . . . . Customers are naturally not as *204 careful in handling the merchandise as clerks would be.'" Iwai, 129 Wash.2d at 99, 915 P.2d 1089 (alterations in original) (quoting Ciminski v. Finn Corp., 13 Wash.App. 815, 818, 537 P.2d 850, review denied, 86 Wash.2d 1002 (1975)). Under those circumstances, the requirement of showing notice is eliminated, but only if the particular self-service operation of the defendant is shown to be such that the existence of the unsafe conditions is reasonably foreseeable. Pimentel, 100 Wash.2d at 49-50, 666 P.2d 888. In Ingersoll, the Washington Supreme Court held that for the exception to apply, "There must be a relation between the hazardous condition and the self-service mode of operation of the business." 123 Wash.2d at 654, 869 P.2d 1014.
¶ 24 In Iwai, the Washington Supreme Court revisited the Pimentel "self-service" exception in a case involving the defendant's duty to protect invitees from dangerous snow or ice conditions in its parking lot. The court issued three opinions. Four justices signing the court's plurality opinion favored stating the Pimentel exception more broadly, not tied to self-service operations as key to the exception; they held that the reasonably foreseeable exception to the notice requirement should be applied to "any situation . . . where `the nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable.'" Iwai, 129 Wash.2d at 100, 915 P.2d 1089 (internal quotation marks omitted) (quoting Ingersoll, 123 Wash.2d at 654, 869 P.2d 1014). Four justices signing a concurring and dissenting opinion favored continuing to limit Pimentel to self-service business operations. Id. at 103-04, 915 P.2d 1089 (Guy, J., concurring and dissenting). A second concurring opinion expressed paramount concern for certainty in premises liability law, and concluded that sections 343 and 343A of the Restatement (Second) of Torts provide adequate protection to invitees without creating a confusing extension of Pimentel. Id. at 102-03, 915 P.2d 1089 (Alexander, J., concurring). As correctly noted by Division Two of this court, in the absence of a majority, the Iwai opinion is not binding precedent and, so far, no other Washington court has extended Pimentel beyond the self-service setting. Fredrickson, 131 Wash.App. at 192, 127 P.3d 5 (citing W.R. Grace & Co. v. Dep't of Revenue, 137 Wash.2d 580, 593, 973 P.2d 1011, cert. denied, 528 U.S. 950, 120 S.Ct. 371, 145 L.Ed.2d 290 (1999)).
¶ 25 Pimentel reaffirmed that most plaintiffs still need to show that a proprietor had actual or constructive notice of an unsafe condition. Wiltse, 116 Wash.2d at 460-61, 805 P.2d 793 (citing Pimentel, 100 Wash.2d at 40, 49, 666 P.2d 888). Whether the Pimentel exception applies is often determined as a matter of law. See, e.g., Wiltse, 116 Wash.2d at 462, 805 P.2d 793; Coleman, 70 Wash.App. at 218, 853 P.2d 473; Arment v. Kmart Corp., 79 Wash.App. 694, 700, 902 P.2d 1254 (1995). The entryway to the Toys R Us store is not a self-service area, nor is there a relationship between moisture tracked into a business entrance and the selfservice nature of the store's operations. See Coleman, 70 Wash.App. at 219, 853 P.2d 473. Ms. Charlton is not exempt from the requirement of showing notice, and her failure to establish that Toys R Us had actual or constructive notice of the water in which she slipped is an additional ground to affirm the trial court's summary judgment dismissal of her case.
¶ 26 Ms. Charlton finally argues that there are disputes of fact as to when the area was mopped and whether cautionary signs were posted. Toys R Us did not rely for its motion on having mopped or posted warnings in the entryway, and it does not avail Ms. Charlton to raise the disputes; they are immaterial in light of her failure to present any genuine issue of fact as to other essential elements of her negligence claim.
¶ 27 Ms. Charlton requests costs on appeal, but not having prevailed, she is not entitled to them. RAP 14.2.
¶ 28 We affirm.
WE CONCUR: KULIK, C.J., and KORSMO, J.
NOTES
[1] Ms. Charlton also relies on cases from courts of other states to support this proposition. Precedents from other jurisdictions do not control our decisions. State ex rel. Todd v. Yelle, 7 Wash.2d 443, 451, 110 P.2d 162 (1941).