# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CINDY and MATTHEW HOLTTUM, )
husband and wife, and the marital )          No. 69409-0-I
community composed thereof, )
)
            Appellants, )          DIVISION ONE
)
)          UNPUBLISHED OPINION
            v. )
)
ROSS STORES, INC., a foreign )
corporation licensed to do business in the )
State of Washington; and ROSS DRESS )
FOR LESS, INC., a Washington )
corporation, )
)
            Respondents. )          FILED: December 9, 2013
)

APPELWICK, J. — The Holttums appeal from summary judgment dismissing their personal injury claims arising from a slip and fall. They argue the trial court erred in striking their expert's testimony and in failing to deny summary judgment as a spoliation sanction for the failure of Ross to preserve a video of the incident. We affirm.

## FACTS

Cindy Holttum was shopping at a Ross Stores, Inc. store in Lynwood on March 23, 2011. At checkout, Holttum slipped on a grape and fell to the ground, injuring her shoulder. She and her husband brought a negligence suit against Ross on April 29, 2011.

Ross moved for summary judgment, arguing that the Holttums failed to establish that Ross owed or breached any duty of care to Ms. Holttum. The Holttums countered that Ross committed spoliation when it allowed a video of the fall to auto-delete after 17 days. They urged that Ross's failure to preserve this evidence precluded summary judgment.

The Holttums also provided a declaration from an expert witness, Joellen Gill. Gill, a human factors engineer, testified about the slipping hazards created by small fruits. Ross moved to strike her declaration as conclusory and speculative. The trial court granted both the motion to strike and the motion for summary judgment.

The Holttums appealed, arguing that Gill's testimony was admissible; Ross's negligence was a material fact precluding summary judgment; and denial of summary judgment was the minimum sanction warranted by Ross's failure to produce the video.

## DISCUSSION

### I. Expert Testimony

The Holttums contend that the court erred in excluding the testimony of expert witness Gill. They assert that Gill provided several conclusions helpful to the trier of fact.

We review de novo a trial court ruling on a motion to strike evidence made in conjunction with a summary judgment motion. See Momah v. Bharti, 144 Wn. App. 731, 749, 182 P.3d 455 (2008). When the court rules on a motion for summary judgment, it may only consider admissible evidence. CR 56(e); King County Fire Prot. Dist. No. 16 v. Hous. Auth. of King County, 123 Wn.2d 819, 826, 872 P.2d 516 (1994).

Expert testimony is admissible when (1) the witness qualifies as an expert, (2) the opinion is based upon an explanatory theory generally recognized in the scientific community, and (3) if it will be helpful to the trier of fact. ER 702; In re Per. Restraint of Morris, 176 Wn.2d 157, 168-69, 288 P.3d 1140 (2012). Expert testimony is helpful if it concerns matters beyond the average layperson's common knowledge and is not misleading. State v. Groth, 163 Wn. App. 548, 564, 261 P.3d 183 (2011), review

2

denied, 173 Wn.2d 1026, 272 P.3d 852 (2012). An expert must rely on facts and data, not mere speculation. Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha, 126 Wn.2d 50, 103, 882 P.2d 703 (1994). Conclusory opinions lacking adequate foundation will be excluded. Miller v. Likins, 109 Wn. App. 140, 148, 34 P.3d 835 (2001).

Gill bases her opinions in this case on the Holttums' complaint and her independent research in her field. Relying on that information alone, she suggests that Ross's floor was extraordinarily dangerous and that she is familiar with the risk management practices of stores like Ross. Moreover, she concludes that "the measures taken by Ross were inadequate." Without reviewing Ross's policies or visiting the store, these statements lack adequate foundation and are speculative.

In the remainder of her declaration, Gill essentially concludes that falling is dangerous and that small fruits create a slipping hazard on smooth floors. The issue here is not whether there was a risk from a grape on the particular type of floor, but whether Ross knew about the grape and should have prevented the fall as a result of that knowledge. Her testimony was not relevant to this issue.

The trial court properly granted Ross's motion to strike Ms. Gill's testimony.

## II. Summary Judgment

This court reviews summary judgment orders de novo. Hadley v. Maxwell, 144 Wn.2d 306, 310-11, 27 P.3d 600 (2001). Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Peterson v. Groves, 111 Wn. App. 306, 310, 44 P.3d 894 (2002). When considering the evidence, the court draws reasonable inferences in the

light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995).

The Holttums assert that the trial court improperly granted Ross's motion, because Ross's negligence is a material fact precluding summary judgment. To establish a cause of action for negligence, a plaintiff must demonstrate that (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) damages resulted, and (4) the defendant's breach proximately caused the damages. Tincani v. Inland Empire Zoological Soc'y, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). Only duty is at issue here.

In premises liability, the scope of the duty of care depends on the entrant's status: invitee, licensee, or trespasser. Id. at 28. The parties agree that Holttum was a business invitee. A proprietor is liable for harm to business invitees if he or she (1) knows of, or by the exercise of reasonable care would discover, a condition presenting an unreasonable risk of harm; (2) should expect that invitees would not discover the danger or would fail to protect themselves from it; and (3) fails to exercise reasonable care to protect invitees against the danger. Iwai v. State, 129 Wn.2d 84, 93-94, 915 P.2d 1089 (1996). To demonstrate knowledge of an unsafe condition, an invitee plaintiff must show that a proprietor caused the condition or had actual or constructive notice of it. Coleman v. Ernst Home Ctr., Inc., 70 Wn. App. 213, 217, 853 P.2d 473 (1993). Constructive notice will be inferred if the condition exists long enough for a person exercising ordinary care to discover it. Wiltse v. Albertson's, Inc., 116 Wn.2d 452, 459, 805 P.2d 793 (1991).

The evidence did not show Ross had actual knowledge of the presence of the grape upon which Holttum slipped. The dispute at summary judgment was whether Ross had constructive notice of an unsafe condition.

Two of the Ross employees present when Holttum fell were Sarah Gartland, the manager on duty, and Matthew Kubeck, the store protection specialist. Kubeck spends about 90 percent of his time at the front greeting customers and making sure they dispose of food and beverages before they enter. Each hour, he and Gartland walk through the store to make sure there were no dangerous conditions present.

On the day of the incident, Kubeck and Gartland both performed their regular walkthroughs. Kubeck testified that, a short time before the fall, he inspected the floor and observed no hazards. His inspection included the checkout area where the incident occurred. Gartland also inspected the area "just minutes prior to Holttum's fall." She was "surprised" by the discovery of the grape after the fall, because of her recent check.

Employees later learned that, before Holttum fell, a child had wandered alone between registers. Store cameras captured the incident. Kubeck and Gartland testified about the sequence of events based on their review of the video footage:

> [W]e realized that a small child of the age of probably like two, two and a half, had wandered up just moments before, probably munching, looked like she is chewing on something, she was there for probably 30, 35 second[s], [and] wandered back out of camera view.

> You can see a child come through between registers five and I guess the next one is three, so you see a child between those registers. Then you see something on the floor. And then you see the child leave between two other different registers.

The testimony does not indicate that anyone saw the child when she was unaccompanied.[1] Gartland said that "there was no one up at the register at this time. Then a customer comes up to the register. [A cashier] rang them up."[2] Gartland also testified that, based on the video, "[t]he child was not tall enough to be able to see from the register. . . . [T]he child would not be able to see, and you could not see the child from the counter because of how short [she was]."

Kubeck came back to the front of the store after his walkthrough, and after the child wandered off, and put some carts away. He may have gone briefly back to the sales floor, but shortly took his post across from the registers. "[M]oments later," Holttum came up to the register. She was either the first or the second customer to approach the counter after the child dropped the grape.[3]

After unloading her items, Holttum returned her cart to the cart area. On her way back to the counter, she stepped on the grape and fell. From his position near register three, Kubeck witnessed the fall "[f]rom start to finish."

There is no evidence that Ross had actual knowledge of the grape's presence. None of the deposed employees saw the child wander unsupervised past the checkout area. None saw the child drop the grape. None observed the grape on the floor. Nor is there sufficient evidence for us to impute constructive knowledge.

---

[1] Kubeck had seen the child enter the store earlier that evening. At that point, she was with her parents, who had put her in a cart. Kubeck did not know until he reviewed the video that the child was the one who dropped the grape.

[2] The record contains no testimony from that cashier, nor any further evidence about his position or observations that day.

[3] The exact timeline here is unclear. This sequence of events is based on Gartland's and Kubeck's depositions.

The record shows that after the small child left the checkout area it was a very short period of time before Holttum's fall. The employees made their regular inspection walkthroughs, but the record does not establish the precise location of the grape relative to the walkways, registers, or paths the employees walked during their check to demonstrate it must have been observable to the employees. Nothing in the record suggests that the floor tile contrasted with the grape so that any employee in the vicinity should have seen it within the brief time frame.

We cannot conclude that the grape should have been discovered within this time frame on this record. Therefore, the Holttums cannot establish a prima facie case that Ross breached its duty to Holttum. The trial court properly granted summary judgment.

III. Spoliation

The Holttums argue that, by failing to preserve the video evidence, Ross committed spoliation. An appellate court generally reviews the trial court's decision on spoliation for abuse of discretion. Henderson v. Tyrrell, 80 Wn. App. 592, 604, 910 P.2d 522 (1996). However, where the spoliation issue was decided through summary judgment, the court's review is de novo. Tavai v. Walmart Stores, Inc., ____ Wn. App. ____, 307 P.3d 811, 817 (2013).

According to the Holttums, but for the spoliation, they would have had a prima facie case to survive summary judgment. They suggested that the court draw an adverse inference from Ross's failure to produce the video. They further asserted that an "appropriate sanction" in this case would be to deny Ross's motion. The trial court granted summary judgment without comment on the spoliation issue. From this, we may interpret that it rejected the Holttums' spoliation arguments.

7

The court may draw an adverse inference from a party's failure to produce evidence:

> [W]here relevant evidence which would properly be a part of a case is within the control of a party whose interests it would naturally be to produce it and he fails to do so, without satisfactory explanation, the only inference which the finder of fact may draw is that such evidence would be unfavorable to him.

Pier 67, Inc. v. King County, 89 Wn.2d 379, 385-86, 573 P.2d 2 (1977). But, an inference may not serve substantive proof of any fact essential to a plaintiff's case. Walker v. Herke, 20 Wn.2d 239, 249, 147 P.2d 255 (1944). An inference is a persuasive—not probative—element considered in weighing the effect of other evidence. Id. Where the Holttums cannot independently demonstrate a prima facie case, an inference will not protect them against summary judgment. The trial court did not err by granting summary judgment in the absence of a prima facie case.

Nor did the court abuse its discretion by granting Ross's motions over the Holttums' allegations of spoliation. In determining whether evidence destruction constitutes spoliation, this court looks at two general factors: (1) the potential importance or relevance of the missing evidence and (2) the culpability of the adverse party. Henderson, 80 Wn. App. at 607.

Here, the video was important and useful for determining the sequence of events. As for culpability, the evidence does not establish that Ross acted in bad faith. Even so, a party may be responsible for spoliation if it had a duty to preserve the evidence. See Henderson, 80 Wn. App. at 610. A potential litigant does not have a strict duty to preserve evidence. See Homeworks Constr., Inc. v. Wells, 133 Wn. App. 892, 901, 138 P.3d 654 (2006). Instead, Washington courts have looked to other case-

by-case factors. See, e.g., id. (control over the evidence or knowledge of its impending destruction); Henderson, 80 Wn. App. at 611 (passage of time); Hampson v. Ramer, 47 Wn. App. 806, 812, 737 P.2d 298 (1987) (opposing party's request for retention or inspection of the evidence); Pier 67, 89 Wn.2d at 385 (sufficient notice of a pending lawsuit).

At least one Ross employee witnessed Holttum slip and fall to the ground. The fall was serious enough that Gartland informed both the Ross corporate office and her superior, Dan Brevig, about it the next day. At that point, Holttum had already contacted Brevig directly. Ms. Holttum also made a call to Ross's insurer wherein she informed them she was going to see a doctor. Though Ross did not receive actual notice of the suit until after the video was deleted, Ms. Holttum's actions prior to that point provided some indication that she would likely pursue a claim.

Ross also violated its own company policy by failing to preserve the video. Internal directives and policies may provide evidence of negligence. See, e.g., Joyce v. Dep't of Corr., 155 Wn.2d 306, 324, 119 P.3d 825 (2005). Under Ross's policy, employees are required to preserve and label any evidence involved with a customer's injury. Ross preserved no video evidence regarding Ms. Holttum's accident, despite the fact that it could have saved the video without trouble.[4]

Ross had notice that Holttum might pursue a claim, had control of the evidence, and it negligently failed to preserve that evidence. This is sufficient to constitute spoliation. But, the relevant information to show that Ross should have known about

---

[4] Brevig testified that it would not have been difficult to save the video to a compact disk and that the video remained stored for more than two weeks.

the grape was otherwise available. The employee testimony provided key information about the contents of the video, including how, when, and where the grape was dropped. Employees were available to testify as to where they were before and after the grape was dropped. Holttum could testify as to the location of the grape when she stepped on it and fell. The color of the floor and the grape were available. Where the destruction was merely negligent and the relevant information was otherwise available, the failure to preserve the evidence here is not so egregious as to mandate sanctions. We decline to exercise our discretion to impose sanctions on these facts.

IV. Loss of Consortium Claim

Ross asserts that Mr. Holttum surrendered his loss of consortium claim by not briefing it on appeal. The Holttums counter that the claim was effectively challenged, because the notice of appeal sought review of "'all adverse orders.'"

An appellant's brief must contain a statement of each separate error the appellant contends that the trial court made. RAP 10.3(a)(4). Washington law treats a loss of consortium claim as separate from—not derivative of—an injured spouse's claim. Oltman v. Holland Am. Line USA, Inc., 163 Wn. 2d 236, 250, 178 P.3d 981 (2008). An injured spouse's inability to bring a claim will not alone bar a loss of consortium claim. Id.

The Holttums' opening brief makes no mention of Holttum's consortium claim. And, their reply brief mistakenly argues that Holttum's claims need not be addressed because they are derivative of his wife's. Holttum did not properly brief loss of consortium on appeal. He has surrendered the claim.

We affirm.

WE CONCUR:

Appelwick, J

Schindler, J

Becker, J.